UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AMY L. JONES | * | CIVIL ACTION NO. 20-718 |
| | * | |
| VERSUS | * | SECTION: "A"(1) |
| | * | |
| ANDREW SAUL, COMMISSIONER OF | * | JUDGE JAY C. ZAINEY |
| THE SOCIAL SECURITY | * | |
| ADMINISTRATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************** | * | |

REPORT AND RECOMMENDATION

The plaintiff, Amy L. Jones, seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 423, 1381. The matter has been fully briefed on cross-motions for summary judgment. For the following reasons, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc.19) be DENIED and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 20) be GRANTED.

**Procedural Background**

Jones applied for DIB on June 25, 2016, and applied for SSI on September 19, 2016. In both applications she asserted a disability onset date of July 1, 2014. She alleged the following illnesses, injuries, or conditions: thyroid disorder, gout, depression, anxiety, and obesity. On January 19, 2017, her claims were denied by the state agency.

Jones obtained counsel and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 13, 2019.[1] On July 1, 2019, the ALJ issued an adverse decision. Jones timely appealed to the Appeals Council, which denied review on January 31, 2020.

On March 2, 2020, Jones filed a Complaint in federal court to review the Commissioner's decision. (Rec. Doc. 1). The Commissioner answered and filed the administrative record. (Rec. Docs. 12, 13). The parties filed cross-motions for summary judgment. (Rec. Docs. 18, 19). Jones is represented by counsel.

## Decision of the Administrative Law Judge

The ALJ found that Jones met the insured status requirements of Title II of the Act through March 31, 2018. The ALJ found there was currently no evidence demonstrating that Jones had engaged in substantial gainful activity since July 1, 2014, the alleged onset date. The ALJ determined that Jones has the following severe impairments: Hypertension, hypothyroidism,[2] and obesity. In so finding, the ALJ determined that Jones' mental impairments of depressive disorder and history of opioid dependence were not severe. Next, the ALJ determined that Jones does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then found that Jones has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). The ALJ determined that Jones is capable of performing her past relevant job as a cleaner as it is customarily performed in the national economy because that work does not require the performance of work-related

---

[1] Jones' original counsel withdrew in September 2017, and on September 11, 2018, the date her hearing was originally scheduled, Jones requested the hearing be postponed so that she could obtain representation.

[2] As the Commissioner points out, there appears to be a scrivener's error on page 11 of the ALJ's opinion which lists "hyperthyroidism" as the third finding of fact and conclusion of law. Throughout the opinion, though, the ALJ refers only to hypothyroidism. Both the transcript and Jones' medical records refer to hypothyroidism, not hyperthyroidism.

activities precluded by Jones' residual functional capacity. In the alternative, considering Jones' age, education, work experience, and residual functional capacity, the ALJ found there were other jobs that exist in significant numbers in the national economy that Jones can also perform. The ALJ concluded that Jones has not been under a disability, as defined in the Act, from July 1, 2014, through the date of decision.

## Statement of Issues on Appeal

Issue No. 1.   Whether the ALJ's decision finding that Jones is not disabled under the Act is supported by substantial evidence.

## Analysis

### I. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).  Substantial evidence is more than "a mere scintilla," but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)).  This court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461.

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992).  Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether

substantial evidence exists to support it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

## II.     Entitlement to Benefits under the Act.

To be considered disabled under the Act, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to the regulations promulgated under the Act, the Commissioner engages in a five-step sequential evaluation process to determine whether an individual qualifies as disabled. See 20 C.F.R. § 404.1520(a)(4). At each step, if the Commissioner determines that an individual is or is not disabled (depending on the step), her decision is made on that basis and she does not proceed to the next step. Id. Following these same five steps, the ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

Perez, 415 F.3d at 461. The burden of proof is on the claimant in steps one through four, and then at step five, the Commissioner must "show that the claimant can perform other substantial work in the national economy." Id. Once the Commissioner has made this showing, the claimant bears the burden to rebut the finding. Id. An assessment of the claimant's residual functional capacity is used in steps four and five to determine the claimant's ability to perform his past work or any other type of work. Id.

### III.     Plaintiff's Appeal.

*Issue No. 1.     Whether the ALJ's decision finding that Jones is not disabled under the Act is supported by substantial evidence.*

a. *Parties' Arguments*

Jones argues that the ALJ erred in finding that she is not disabled from her former work because the ALJ failed to take into account the medical and mental evidence purportedly demonstrating that she is unable to engage in any gainful activity and failed to give sufficient weight to the Functional Limitation Form filled out by her treating physician, Dr. Gary Birdsall. Jones submits that she has been treated by Dr. Eddie Smith and Dr. Birdsall over the years. She had a longstanding opioid dependence requiring treatment with Suboxone. She submits that the opioid dependence is in remission with the use of Suboxone. She submits that she was diagnosed with hypothyroidism in 2009. She says the condition has become debilitating to her functional physical activity. In support, she cites three progress notes from her treatment with Dr. Smith and one prescription refill authorization request showing that she had been prescribed levothyroxine. R. at 301, 308, 319, 336. The progress notes are dated July 20, 2016, January 4, 2012, and October 14, 2009, and reference "hypothyroid" or "thyroid profile," but there is no legible reference to any functional limitations or complaints or any clinical testing. R. at 301, 308, 336.

Jones submits that the records of her treatment with Dr. Birdsall show that she has been diagnosed with hypothyroidism and depressive disorder. She cites the record of her September 25, 2018, encounter with Dr. Birdsall when she reported increased anxiety, panic symptoms, that she had no desire to continue living, and that her symptoms interfered with household activities and sleep. R. at 384. She also reported symptoms of weakness, lightheadedness, fatigue, depressed mood, generalized pain, and edema associated with hypothyroid. Id.  She reported shortness of

breath, but no cough, wheezing, chest pain, or palpitations. Id. Diagnoses of hypothyroidism and depressive disorder were noted. Id.

Jones also cites the record of her February 23, 2018, encounter with Dr. Birdsall. R, at 385-88. She reported feeling sad, empty, or tearful; a loss of interest in activities; sleep disturbance or insomnia; agitation; loss of energy; and a history of depression. R. at 386. She was oriented but had a decreased ability to concentrate, memory lapses, and forgetting of words. Id. She submits that all of this would materially affect her ability to focus and concentrate in any work environment.

Jones further cites the Functional Limitations Form completed by Dr. Birdsall on November 21, 2018. R. at 470. Therein, Dr. Birdsall opined that Jones could sit for 6 hours, stand for 1 hour, and walk for 1 hour in an 8 hour workday, with rest. Id. He opined that she could occasionally lift or carry up to 10 pounds and never lift or carry more than that. Id. He opined that she could use her hands for simple grasping and fine manipulating but not for pushing and pulling. Id. He opined that she could never bend, squat, crawl, climb, or reach above shoulder level. Id. He opined that she could not return to her previous employment or work at all. Id. He opined that she had a disability rating of 100%. Id. He opined that she did not appear to be motivated toward realizing further employment. Id. Jones argues this form indicates the severity of her inability to function without being a danger to herself or others.

Jones argues that her medical issues are further complicated by her mental issues. She notes that Dr. M. Kaleem Arshad, psychiatrist, diagnosed her with depression in September 2016. She cites a 2016 record from her treatment at Teche Action Clinic, where diagnoses included depression by history. R. at 343.

Jones argues that the records of Dr. Paul Ganier, LPC and Dr. Arshad show a relevant diagnosis of depression, panic attacks with psychotic episodes, and a previous diagnosis of Schizophrenia. She cites notes of her February 13, 2019,[3] evaluation by Dr. Arshad when diagnoses of Schizophrenia and depression were noted. R. at 444.

Jones argues that due to the combination of her physical and mental difficulties, her impairments rise to the level of a listed impairment and she should be found to be functionally and anatomically disabled.

The Commissioner opposes, arguing that the ALJ properly considered the evidence in the record and that the ALJ's decision is supported by substantial evidence. The Commissioner argues that the ALJ considered the record as a whole. For example, the ALJ acknowledged that Jones sought treatment for hypothyroidism and hypertension, but concluded that she did not exhibit persistent edema or poor medication efficacy. The Commissioner cites records of her treatment with Dr. Birdsall on February 23, 2018, October 26, 2018, and February 5, 2019 when no edema was observed. R. at 388, 452, 458. The Commissioner submits that Jones exhibited a normal gait and normal lower extremity strength, citing records of Jones' treatment at the Teche Action Clinic when her gait was described as normal on August 9, 2016; her treatment with Amber Sevin, nurse practitioner, on June 2, 2016, when normal range of motion was noted; and her treatment with Dr. Birdsall on February 5, 2019, and October 26, 2018, when she had normal gait and station, normal tone and motor strength, and normal movement of all extremities. R. at 348, 362, 453, 458. The Commissioner argues that the cited records support the ALJ's finding that Jones is limited to light work because these types of jobs do not require strenuous activity and are consistent with her diagnoses.

---

[3] Her memorandum refers to a January 23, 2019, medical note, but cites the February 13, 2019 record. There do not appear to be any notes dated January 23, 2019.

7

With regard to the Functional Limitation Form completed by Dr. Birdsall, the Commissioner argues that the ALJ properly considered it. The Commissioner points out that at Jones' February 23, 2018, appointment, Dr. Birdsall noted her mood was normal, her affect was active and alert, her judgment was good, and her recent and remote memory were normal. R. at 387. The Commissioner argues that the ALJ considered the check-box form filled out by Dr. Birdsall in November 2018, but appropriately determined that Dr. Birdsall's examination notes do not support his findings in the form. Further, the Commissioner argues that Dr. Birdsall's findings on the form are not supported by any clinical findings. Additionally, the Commissioner argues that check box forms like the one completed by Dr. Birdsall are brief and conclusory and may be disregarded by the ALJ. Finally, the Commissioner argues that Dr. Birdsall's opinion of disability intrudes upon an area reserved to the Commissioner and, therefore, the ALJ may reject it.

To the extent Jones argues that the record supports additional limitation in her ability to concentrate and focus, the Commissioner argues the claim is without merit. The Commissioner argues that the record reflects subjective complaints but no objective records to support them. The Commissioner submits that when subjective complaints are not supported by objective medical evidence, the ALJ has the discretion to discredit them.

With regard to Jones' argument that she meets the requirements of a listed impairment, the Commissioner submits that she has failed to set forth which listed impairment she believes applies much less how she meets the strict requirements of any listed impairment.

b. *Analysis*

The court finds that substantial evidence supports the ALJ's findings. Based upon a review of the medical records, the ALJ found Jones has the residual functional capacity to perform the full range of light work as defined by the regulations. The regulations provide that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b); id. § 416.967(b). The ALJ imposed these exertional restrictions based on evidence showing that Jones requires ongoing medical management for hypothyroidism and hypertension. The ALJ noted that Jones' August 2016 complaints of foot swelling and leg pain had been considered, but added that comparable findings were not reported in subsequent examinations. The ALJ determined that the evidence did not demonstrate persistent edema and that Jones' hypothyroidism did not result in gait disturbance or decreased lower extremity strength. The ALJ noted that "light activities do not involve strenuous exertion efforts that could contribute to hypertensive exacerbations or exacerbate subjective complaints of shortness of breath episodically reported by the claimant." R. at 15.

To challenge the ALJ's findings, Jones points to little more than her diagnoses and the Functional Limitation Form completed by Dr. Birdsall. For example, she says that her hypothyroidism has become debilitating, but provides no explanation of how her hypothyroidism has affected her functional physical activity. The cited records reflect her diagnosis and the prescription of medication for the condition, but they do not reflect any complaints or observations of functional limitations. She refers to certain subjective complaints that she made to Dr. Birdsall in September 2018, including complaints of depressed mood and edema, and on February 23, 2018, when she reported feeling sad, empty, or tearful; having a loss of interest in activities; sleep disturbance or insomnia; agitation; loss of energy; increased anxiety; lightheadedness; weakness;

9

fatigue; shortness of breath; and that her symptoms interfered with household activities and sleep. R. at 384. The court notes that Jones also reported edema on June 2, 2016, when treating with nurse Sevin. R. at 362-63.

But as the Commissioner points out, Jones reported no edema on February 23, 2018, October 26, 2018, and February 5, 2019. At the same February 23, 2018, appointment cited by Jones in her motion, she also reported she was able to bathe, dress, feed, get out of a chair or bed, groom, and toilet with limited or no assistance. R. at 386. She reported being able to do housework, grocery shop, manage medications, manage money, prepare meals, and use the phone with limited or no assistance. Id. She reported that she exercises on a regular basis. Id. Upon a review of systems, she had good judgment, had normal mood and affect, was active and alert, and had normal recent and remote memory. R. at 387.

Further, as the Commissioner points out, Jones exhibited normal gait on August 9, 2016, February 5, 2019, and October 26, 2018. R. at 348, 453, 458. She had normal range of motion and/or normal strength on June 2, 2016, February 5, 2019, and October 26, 2018. R. at 362, 453, 458. These records support the ALJ's conclusion that Jones can perform light work.

Jones also points to the Functional Limitations Form completed by Dr. Birdsall. The ALJ considered this statement and compared it against his clinical notes and found inconsistencies. For example, the ALJ noted that the month before issuing the statement, Dr. Birdsall found Jones' gait, station, motor strength, and muscle tone were normal. Indeed, on October 26, 2018, Dr. Birdsall's notes of physical examination record normal tone and motor strength, normal movement of all extremities, no edema, and normal gait. R. at 458. Although Jones reported muscle aches, arthralgias/joint pain, and swelling in the extremities, she reported no muscle weakness and no back pain. Id. The ALJ also considered that Dr. Birdsall noted normal findings in the same areas

in February 2019. R. at 453. The court finds that substantial evidence supports the ALJ's conclusion that Dr. Birdsall's clinical notes are inconsistent with his findings on the Functional Limitation Form.

The ALJ further considered that Dr. Birdsall did not identify any specific clinical findings or impairments as causal factors relating to the limitations he assessed in the form. Indeed, Dr. Birdsall's opinion involved filling out a single page form with places to check boxes and circle numbers of hours. No narrative with diagnosis, symptoms, impairments, or clinical findings was included. Forms like this have been viewed with suspicion when they are not adequately supported by medical evidence. DeJohnette v. Berryhill, 681 F. App'x 320, 321–22 (5th Cir. 2017) ("[T]he ALJ was well within its discretion to conclude that [the treating psychiatrist's] checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability."); DeJohnette v. Berryhill, 681 F. App'x 320, 321–22 (5th Cir. 2017) ("[T]he ALJ was well within its discretion to conclude that [the treating psychiatrist's] checking a single box on a single form without any supporting medical evidence did not outweigh the other substantial record evidence supporting a finding of no disability."). Courts have also questioned the objectivity of such opinions when they appear to be created in anticipation of litigation. E.g., Johnson v. Soc. Sec. Admin., No. CV 15-4811, 2016 WL 6902115, at *4 (E.D. La. Sept. 23, 2016), report and recommendation adopted, No. CV 15-4811, 2016 WL 6892878 (E.D. La. Nov. 23, 2016).

Given the conclusory nature of the forms and the inconsistency of Dr. Birdsall's opinions therein as compared to his treatment notes, the court finds no error in the ALJ's conclusion that Dr. Birdsall's opinion was not persuasive.

With regard to Jones' mental impairments, the records are sparse. As Jones points out, the records indicate that she had been diagnosed with depression. When treating at the Teche Action Clinic on September 23, 2016, she was diagnosed with depression by history. R. at 343. But the notes of that visit are contradictory. Symptoms are noted to be change in sleep pattern, anxiety, difficulty in focusing, depression, and moodiness, with no symptoms of hyperactivity, no suicidal thoughts or attempts, no obsessive thoughts or compulsions, and no disturbing thoughts or feelings. R. at 342. She reported her main issue was inability to concentrate, and under psychiatric progress notes her concentration was "poor." R. at 343. Yet the mental status exam notes report that her mood was normal, her affect was appropriate, and her thought process, judgment, recent memory, remote memory, concentration, attention, and abstract thinking were intact. Id. And in the narrative, it is noted that "She denies being depressed at this time." Id.  She reported she was unemployed and had applied for disability but might go back to work as a secretary. R. at 343. Yet notes of a mental status exam on the next page, for the same visit, report her mood is depressed and her affect is blunted. R. at 344. The inconsistency of this record makes it problematic to rely on. Notes of her August 9, 2016, appointment at Teche Action Clinic, though, are consistent. R. at 348.  She had appropriate judgment, good insight, intact recent and remote memory, euthymic mood, and appropriate affect. Id.  She reported no symptoms of anxiety or depression. Id.

Jones also cites her treatment with Dr. Arshad. As the ALJ observed, records of her February 13, 2019, visit with Dr. Arshad show she reported crying spells and anxiety attacks. R. at 442. Diagnoses of depression and schizophrenia were noted. R. at 444. She was prescribed Seroquel, Cymbalta, and Klonopin. Id.  When she returned to Dr. Arshad on April 8, 2019, she reported doing better. R. at 446. She had full affect and was cooperative. Id.  But her thought process was tangential and her attention/concentration was distracted. Id.  It was ordered that she

restart her medications and would try to get counseling. Id. Cymbalta, Seroquel, and Klonopin were prescribed. R. at 447. At her May 6, 2019, visit with Dr. Arshad it was noted that her crying spells and upsets were isolated and her anxiety attacks were better. R. at 448. Her mood was depressed and her affect was sad. Id. The same prescriptions were renewed. R. at 449.

In reviewing these records, the ALJ noted that complaints of comparable magnitude to her February 2019 visit had not been previously reported. Indeed, as discussed above, the records of her treatment at Teche Action Clinic do not reflect similar complaints. During her treatment with Dr. Birdsall on February 23, 2018, she reported feeling sad, empty, or tearful and experiencing a loss of interest in activities, but on examination she had normal mood, affect, and memory. R. at 386-87. At her September 25, 2018, appointment with Dr. Birdsall, she reported depression, sleep disturbances, and anxiety. R. at 384. She reported that Setraline had worked for a year in the past, that she had restarted it six months earlier, but that it had not been working for the past two months. Id. The dosage was increased. Id. When she returned to Dr. Birdsall on February 5, 2019, she reported increased anxiety and no desire to continue living. R. at 452. Yet on examination she had good judgment and insight, normal mood and affect, no diffuse anxiety or paranoid ideations, and normal recent and remote memory. R. at 453. She also reported that "her depression is better now, but she is not taking any medication for her symptoms." R. at 454. She was prescribed duloxetine. Id. Her diagnosis was major depressive disorder, single episode, mild. Id. This visit was only about a week before her February 13, 2019, visit with Dr. Arshad. Further, as noted above, at her subsequent visits to Dr. Arshad, her complaints were not as severe as in February 2019.

The ALJ also considered that Dr. Arshad did not set forth any functional restrictions or limitations relating to Jones' mental complaints. The ALJ concluded that Jones' mental impairments caused no more than mild limitation in the functional areas. The Commissioner

argues that to the extent Jones argues that the record supports limitations in her ability to concentrate or focus, the records contain only subjective statements and no objective records to support such.

Considering the sparse and somewhat contradictory mental health records as a whole, the court finds substantial evidence supports the ALJ's conclusion that Jones' mental impairments cause no more than mild limitations. Jones has failed to demonstrate that any non-exertional limitations should have been included in her residual functional capacity.

In closing, Jones argues that although her condition does not rise to the level of a listed impairment, she believes her difficulties do in fact rise to the level of a listed impairment. She does not say what listing she meets and she essentially admits that she does not meet any of the listed impairments. Thus, the court interprets this as part and parcel of Jones' argument that the ALJ erred in not imposing additional limitations to her residual functional capacity such that she would be found disabled. That argument, as discussed above, has been rejected.

## **RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc.19) be DENIED and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 20) be GRANTED.

## **OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

    New Orleans, Louisiana, this 24th day of June, 2021.

                                              *[signature]*
                                              Janis van Meerveld
                                        United States Magistrate Judge